# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No.  2:21-MJ-05169 |
| Cellular telephone with phone number 626-366-6956, issued by T-Mobile, with IMSI 310260195214460 registered to Ricardo Bocardo | ) ) ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A-3*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251A(a) | Offering to Transfer Custody to Produce Child Pornography |
| 18 U.S.C. § 2251A(b) | Obtaining Custody to Produce Child Pornography |
| 18 U.S.C. § 2251 | Production of Child Pornography |
| 18 U.S.C. § 2252A(a)(2) | Distribution or Receipt of Child Pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession or Access with Intent to View Child Pornography |

The application is based on these facts:

*See attached Affidavit*

☒ Continued on the attached sheet.

☐ Delayed notice of_____days (*give exact ending date if more than 30 days*:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

HSI Special Agent Derek R. Baker
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

_____
*Judge's signature*

City and state: <u>Los Angeles, CA</u>          Honorable Alexander F. MacKinnon, U.S. Magistrate Judge
_____
*Printed name and title*

AUSA: Lara x0427

**ATTACHMENT A-3**

<u>PROPERTY TO BE SEARCHED</u>

The cellular telephone with phone number 626-366-6956, issued by T-Mobile, with IMSI 310260195214460 registered to Ricardo Bocardo (the "SUBJECT TELEPHONE"), provided that the SUBJECT TELEPHONE is located within the Central District of California at the time of the search.

## ATTACHMENT B

**ITEMS TO BE SEIZED**

1.    The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 2251A(a): Offering to Transfer Custody of a Minor for Purposes of Producing Child Pornography; 18 U.S.C. § 2251A(b): Obtaining Custody of a Minor for Purposes of Producing Child Pornography; 18 U.S.C. §§ 2251(a), (e): Production of Child Pornography; 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1): Distribution and Receipt of Child Pornography; and 18 U.S.C. § 2252A(a)(5)(B), (b)(2): Access with Intent to View Child Pornography and Possession of Child Pornography (the "SUBJECT OFFENSES"), namely:

      a.    Child pornography, as defined in 18 U.S.C. § 2256(8).

      b.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, that refer to child pornography, as defined in 18 U.S.C. § 2256(8), including but not limited to documents that refer to the possession, receipt, distribution, transmission, reproduction, viewing, sharing, purchase, or downloading, production, shipment, order, requesting, trade, or transaction of any kind, involving child pornography.

      c.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, and also including but not limited to financial records, tending to identify persons involved in the possession, receipt,

i

distribution, transmission, reproduction, viewing, sharing, purchase, or downloading, production, shipment, order, requesting, trade, or transaction of any kind, involving child pornography, as defined in 18 U.S.C. § 2256, or involving sexual acts with children.

d.   Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, that refer or relate to any production, receipt, shipment, order, request, trade, purchase, or transaction of any kind involving the transmission through interstate commerce by any means, including by computer, of any visual depiction of a minor engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

e.   Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, identifying persons transmitting in interstate commerce, including by computer, any visual depiction of a minor engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

f.   Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, that identify any minor visually depicted while engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

g.   Any and all records, documents, programs, applications, materials, including electronic mail and electronic messages, items, depictions, images, or videos of children, even if not child pornography.

h.   Any and all records, documents, programs, applications, materials, including electronic mail and electronic messages, items, depictions, images, or videos of children, evidencing RODRIGUEZ's or BOCARDO's access to children.

i.   Any and all records, documents, programs, applications, materials, including electronic mail and electronic messages, items, depictions, images, or videos evidencing RODRIGUEZ or BOCARDO attempting to obtain custody of any child.

j.   Any and all records, documents, programs, applications, materials, including electronic mail and electronic messages, items, depictions, images, or videos discussing any sex act with a child or unknown person.

k.   Any and all records, documents, programs, applications, materials, items, depictions, images, or videos of a colostomy bag, the use of a colostomy bag, or of a child who has any medical condition that may require the use of a colostomy bag.

l.   Any and all records, documents, programs, applications, materials, items, depictions, images, videos, or other evidence of Minor Victim 1, Minor Victim 2, or Minor Victim 4.

m.   Any and all records, documents, programs, applications, or materials or items which are sexually arousing to individuals who are interested in minors, but which are not in and of themselves obscene or which do not necessarily depict

iii

minors involved in sexually explicit conduct.  Such material is commonly known as "child erotica" and includes written materials dealing with child development, sex education, child pornography, sexual abuse of children, incest, child prostitution, missing children, investigative techniques of child exploitation, sexual disorders, pedophilia, nudist publications, diaries, and fantasy writings.

      n.    Any and all records, documents, programs, applications, materials, items, images, or depictions of underwear, lingerie, sex toys, or other items that are commonly used in the sexual abuse of children.

      o.    Any records, documents, programs, applications, or materials identifying possible minor victims depicted in child pornography and/or minor victims of sexual abuse.

      p.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, which pertain to peer-to-peer file sharing software.

      q.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, which pertain to accounts with any Internet Service Provider.

      r.    Records, documents, programs, applications, materials, and files relating to the deletion, uploading, and/or acquisition of victim files to include photographs, videos, e-mails, chat logs, or other files.

      s.    Any records, documents, programs, applications, materials, items, files, or products related to or could be used

in the production of images, videos, or other depictions of child pornography.

t.    Any records, documents, programs, applications, materials, items, files, or products related to or could be used in the production of images, videos, or items of sexual activity with children or child pornography.

u.    Any digital device used to facilitate the above-listed violations and forensic copies thereof.

v.    Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the SUBJECT OFFENSES, and forensic copies thereof.

w.    With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized:

i.    evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

ii.    evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii. evidence of the attachment of other devices;

iv.   evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

v.   evidence of the times the device was used;

vi.   passwords, encryption keys, biometric keys, and other access devices that may be necessary to access the device;

vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

viii.   records of or information about Internet Protocol addresses used by the device;

ix.   records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.   As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

3.   As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal

digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

**SEARCH PROCEDURE FOR DIGITAL DEVICES**

4.   In searching digital devices or forensic copies thereof, law enforcement personnel executing this search warrant will employ the following procedure:

b.   Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") will, in their discretion, either search the digital device(s) on-site or seize and transport the device(s) and/or forensic image(s) thereof to an appropriate law enforcement laboratory or similar facility to be searched at that location.  The search team shall complete the search as soon as is practicable but not to exceed 120 days from the date of execution of the warrant.  The government will not search the digital device(s) and/or forensic image(s) thereof beyond this 120-day period without obtaining an extension of time order from the Court.

c.   The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i.   The search team may subject all of the data contained in each digital device capable of containing any of the items to be seized to the search protocols to determine whether the device and any data thereon falls within the list of items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the list of items to be seized.

ii.  The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques, including to search for known images of child pornography.

d.   The search team will not seize contraband or evidence relating to other crimes outside the scope of the items to be seized without first obtaining a further warrant to search for and seize such contraband or evidence.

e.   If the search determines that a digital device does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the device and delete or destroy all forensic copies thereof.

f.    If the search determines that a digital device does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

g.    If the search determines that a digital device is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

h.    The government may also retain a digital device if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

i.    After the completion of the search of the digital devices, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

5.    The review of the electronic data obtained pursuant to this warrant may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.

Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

6.    In order to search for data capable of being read or interpreted by a digital device, law enforcement personnel are authorized to seize the following items:

a.    Any digital device capable of being used to commit, further, or store evidence of the offenses listed above;

b.    Any equipment used to facilitate the transmission, creation, display, encoding, or storage of digital data;

c.    Any magnetic, electronic, or optical storage device capable of storing digital data;

d.    Any documentation, operating logs, or reference manuals regarding the operation of the digital device or software used in the digital device;

e.    Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communication with the digital device;

f.    Any physical keys, encryption devices, dongles, or similar physical items that are necessary to gain access to the digital device or data stored on the digital device; and

g.    Any passwords, password files, biometric keys, test keys, encryption codes, or other information necessary to access the digital device or data stored on the digital device.

x

h.   After the completion of the search of the digital devices, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

7.   During the execution of this search warrant, with respect to BOCARDO, who is located in the Central District of California during the execution of the search and who is reasonably believed by law enforcement to be a user of a biometric sensor-enabled device that falls within the scope of the warrant, law enforcement personnel are authorized to: (1) depress the thumb- and/or fingerprints of BOCARDO onto the fingerprint sensor of the device (only when the device has such a sensor), and direct which specific finger(s) and/or thumb(s) shall be depressed; and (2) hold the device in front of the face of BOCARDO with his eyes open to activate the facial-, iris-, or retina-recognition feature, in order to gain access to the contents of any such device.  In depressing BOCARDO's thumb or finger onto a device and in holding a device in front of BOCARDO's face, law enforcement may not use excessive force, as defined in Graham v. Connor, 490 U.S. 386 (1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

8.   The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.

## AFFIDAVIT

I, Derek R. Baker, being duly sworn, declare and state as
follows:

### I.  INTRODUCTION

1.    I am a Special Agent ("SA") with the United States
Department of Homeland Security ("DHS"), Immigration and Customs
Enforcement ("ICE"), Homeland Security Investigations ("HSI"),
and have been so employed since June 2018.

### II. PURPOSE OF AFFIDAVIT

2.    This affidavit is made in support of an application
for warrants to search the following:

       a.    4628 Bresee Ave, Baldwin Park, California 91706
(the "SUBJECT PREMISES"), as further described in Attachment A-
1;

       b.    The person of Miguel Angel Bocardo ("BOCARDO")
date of birth is 04/22/1999, who appears to be a Hispanic male,
and is approximately 5 feet 6 inches tall, as further described
in Attachment A-2; and,

       c.    The cellular telephone with phone number 626-366-
6956, issued by T-Mobile, with IMSI 310260195214460 registered
to Ricardo Bocardo (the "SUBJECT TELEPHONE"), as further
described in Attachment A-3.

3.    As described further in Attachment B, the requested
warrants seek authorization to seize evidence, fruits, and
instrumentalities, of violations of 18 U.S.C. § 2251A(a):
Offering to Transfer Custody of a Minor for Purposes of
Producing Child Pornography; 18 U.S.C. § 2251A(b): Obtaining

Custody of a Minor for Purposes of Producing Child Pornography;
18 U.S.C. §§ 2251(a), (e): Production of Child Pornography; 18
U.S.C. §§ 2252A(a)(2)(A), (b)(1): Distribution and Receipt of
Child Pornography; and 18 U.S.C. § 2252A(a)(5)(B), (b)(2):
Access with Intent to View Child Pornography and Possession of
Child Pornography (collectively, the "SUBJECT OFFENSES").
Attachments A-1, A-2, A-3, and B are attached hereto and
incorporated herein by reference.

    4.   The facts set forth in this affidavit are based upon
my personal observations, my training and experience, and
information obtained from various law enforcement personnel and
witnesses.  This affidavit is intended to show merely that there
is sufficient probable cause for the requested warrant and does
not purport to set forth all of my knowledge of or investigation
into this matter.  Unless specifically indicated otherwise, all
conversations and statements described in this affidavit are
related in substance and in part only.

### III.  BACKGROUND OF SPECIAL AGENT DEREK R. BAKER

    5.   I am currently assigned to the HSI Los Angeles Child
Exploitation Task Force, where I investigate criminal violations
relating to child exploitation and child pornography, illegal
production, distribution, receipt and possession of child
pornography, in violation of 18 U.S.C. §§ 2252A and the SUBJECT
OFFENSES.  I have received training in the area of child
pornography and child exploitation offenses and have observed
and reviewed various examples of child pornography in all forms
of media, including computer media.

6.    I have participated in the execution of numerous search warrants, many of which involved child exploitation and/or child pornography offenses, including those relating to subjects who use the Internet and two-way communication devices, such as cellular telephones, to entice or coerce minors to engage in sexually explicit conduct.  I make this affidavit based upon my personal knowledge and experience, my review of pertinent documentation, and discussions with other law enforcement officers.

7.    Through both my training and my experience, I have become familiar with the methods of operation used by people who commit offenses involving the sexual exploitation of children. I have attended training classes concerning computer crimes and the sexual exploitation of children on the Internet and through the use of their digital devices.  This training has given me an understanding of how people involved with offenses relating to the sexual exploitation of children use the Internet and digital devices to further those offenses.  My experience in investigations in this regard has supplemented my understanding of how people involved in offenses related to the sexual exploitation of children use the Internet and digital devices to further those offenses.

## IV. BACKGROUND ON CHILD EXPLOITATION OFFENSES, COMPUTERS, THE INTERNET, AND DEFINITION OF TERMS

8.    Based upon my training and experience in the investigation of child pornography offenses, and information related to me by other law enforcement officers involving the

investigation of child pornography offenses, I know the following information about the use of computer with child pornography:

     a.    <u>Computers and Child Pornography</u>.  Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized.  Child pornographers can now produce both still and moving images directly from a common video camera and can convert these images into computer-readable formats.  The use of digital technology has enabled child pornographers to electronically receive, distribute, and possess large numbers of child exploitation images and videos with other Internet users worldwide.

     b.    <u>File Storage</u>.  Computer users can choose their method of storing files: either on a computer's hard drive, an external hard drive, a memory card, a USB thumb drive, a smart phone or other digital media device, etc. (i.e., "locally") or on virtual servers accessible from any digital device with an Internet connection (i.e., "cloud storage").  Computer users frequently transfer files from one location to another, such as from a phone to a computer or from cloud storage to an external hard drive.  Computer users also often create "backup," or duplicate, copies of their files.  In this way, digital child pornography is extremely mobile and such digital files are easily reproduced and transported.  For example, with the click of a button, images and videos containing child pornography can be put onto external hard drives small enough to fit onto a keychain.  Just as easily, these files can be copied onto

compact disks and/or stored on mobile digital devices, such as
smart phones and tablets.  Furthermore, even if the actual child
pornography files are stored on a "cloud," files stored in this
manner can only be accessed via a digital device.  Therefore,
viewing this child pornography would require a computer,
smartphone, tablet, or some other digital device that allows the
user to access and view files on the Internet.

   c.  The following definitions:

   i.  "Child erotica," as used herein, means
materials or items that are sexually arousing to persons having
a sexual interest in minors but that are not necessarily obscene
or do not necessarily depict minors engaging in sexually
explicit conduct.

   ii.  "Child pornography," as defined in 18 U.S.C.
§ 2256(8), is any visual depiction, including any photograph,
film, video, picture, or computer or computer-generated image or
picture, whether made or produced by electronic, mechanical or
other means, of sexually explicit conduct, where: (a) the
production of the visual depiction involved the use of a minor
engaged in sexually explicit conduct; (b) the visual depiction
is a digital image, computer image, or computer-generated image
that is, or is indistinguishable from, that of a minor engaged
in sexually explicit conduct; or (c) the visual depiction has
been created, adapted, or modified to appear that an
identifiable minor is engaged in sexually explicit conduct.

   iii. "Cloud-based storage," as used herein, is a
form of digital data storage in which the digital data is stored

5

on remote servers hosted by a third party (as opposed to, for
example, on a user's computer or other local storage device) and
is made available to users over a network, typically the
Internet. Users of such a service can share links and associated
passwords to their stored files with other traders of child
pornography in order to grant access to their collections. Such
services allow individuals to easily access these files through
a wide variety of electronic devices such as desktop and laptop
computers, mobile phones, and tablets, anywhere and at any time.
An individual with the password to a file stored on a cloud-
based service does not need to be a user of the service to
access the file. Access is typically free and readily available
to anyone who has an Internet connection.

       iv.   "Computer," as used herein, refers to "an
electronic, magnetic, optical, electrochemical, or other high
speed data processing device performing logical or storage
functions, and includes any data storage facility or
communications facility directly related to or operating in
conjunction with such device" and includes smartphones, other
mobile phones, and other mobile devices. *See* 18 U.S.C.
§ 1030(e)(1).

       v.   "Computer hardware," as used herein,
consists of all equipment that can receive, capture, collect,
analyze, create, display, convert, store, conceal, or transmit
electronic, magnetic, or similar computer impulses or data.
Computer hardware includes any data-processing devices
(including central processing units, internal and peripheral

storage devices such as fixed disks, external hard drives, "thumb," "jump," or "flash" drives, which are small devices that are plugged into a port on the computer, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

vi.   "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

vii. "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or

"booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

   viii.  "Encryption" is the process of converting data into a code in order to prevent unauthorized access to the data.

   ix. The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

   x. "Log files" are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

   xi. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

   xii. "Mobile applications," as used herein, are small, specialized programs downloaded onto mobile devices that

enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a.

   xiii.  "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

   xiv. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

   xv. A "storage medium" or "storage device" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

   xvi. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

   xvii.  A "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text

Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

### V.  STATEMENT OF PROBABLE CAUSE

9.    As set forth below in more detail, I believe there is probable cause to search the SUBJECT PREMISES, BOCARDO's person, and the SUBJECT TELEPHONE for evidence related to the SUBJECT OFFENSES.

### A.    Investigation into Steve Jackson Rodriguez

10.  On or about July 12, 2021, law enforcement received information from the National Center for Missing and Exploited Children ("NCMEC") regarding CyberTipline Report 94619315 (the "CyberTip") which identified a user who uploaded child pornography files using their Google account.

11.  On or about August 6, 2021, law enforcement obtained a federal search warrant from the Honorable Maria A. Audero, in case number 2:21-MJ-3616, for a Google Account ("RODRIGUEZ's Google Account") that law enforcement later determined belonged to Steve Jackson RODRIGUEZ ("RODRIGUEZ").

12.  Law enforcement executed the search warrant on RODRIGUEZ's Google Account[1] which showed that several child pornography files were in his account.  RODRIGUEZ's Google Account included videos of RODRIGUEZ sexually assaulting at least two disabled children.  I reviewed RODRIGUEZ's Google

---

[1] In an interview with law enforcement RODRIGUEZ admitted that the referenced Google account was RODRIGUEZ's account.

Account and saw that it contained a video of Minor Victim 1 orally copulating an adult penis and contained videos of Minor Victim 1 being orally copulated by an adult, who I identified as RODRIGUEZ.  These videos were titled "20180101_005747.mp4" and "20180101_010134.mp4."  The government has indicted RODRIGUEZ for producing these videos and other child pornography, among other things, in case 5:21-cr-0188-JWH.  The videos titled "20180101_005747.mp4" and "20180101_010134.mp4" specifically are referenced in Count 6 of the First Superseding Indictment, which is attached as Exhibit 1.

13.  HSI Special Agent Paul Radlinski and I interviewed RODRIGUEZ prior to his arrest on August 25, 2021.  RODRIGUEZ admitted that he owned the Google Account.  RODRIGUEZ also admitted that he owned the telephone number 626-392-8852 (the "8852 Number").  The cellular device on RODRIGUEZ's person (the "iPhone") was later determined to use the 8852 Number.  After law enforcement showed RODRIGUEZ a still image of Minor Victim 1 provided by Google from RODRIGUEZ's Google Account, RODRIGUEZ identified Minor Victim 1 by name, said she was 9 years old, and he met her at work (the "Group Home").  This same minor victim was depicted engaging in sexual conduct in files located in both RODRIGUEZ's Google Account and at least one digital device that was found in RODRIGUEZ's possession.

14.  On or about August 25, 2021, federal search warrants were executed on RODRIGUEZ's person, his car, and his residence

for evidence and to search any digital devices found therein. Law enforcement found multiple digital devices in RODRIGUEZ's possession.  Law enforcement seized the iPhone from RODRIGUEZ's possession, while a second cellular phone was seized from RODRIGUEZ's car (an "LG G6").[2]  RODRIGUEZ was arrested after the search of his car was completed.

15.  According to payroll records and interviews with administrators from the Group Home, which is located in Chino, California, RODRIGUEZ worked as a certified nursing assistant for disabled children from 2014 to 2016, and periodically in 2017.  The Group Home was where Minor Victim 1, Minor Victim 2, and Minor Victim 4 lived.

16.  After a search of the Google Account, the LG G6, and the iPhone, law enforcement found multiple videos and images depicting an adult male sexually assaulting multiple disabled children.  In some of these videos, you can either hear RODRIGUEZ's voice or see his face while minor victims are being sexually assaulted.

17.  According to RODRIGUEZ's text messages found on his LG G6, it appears RODRIGUEZ discussed returning to the Group Home in December 2017 and in January 2018.  Law enforcement obtained

---

[2] An additional device was seized from RODRIGUEZ's residence.

employment records which showed RODRIGUEZ had left his
employment at the Group Home towards the end of January 2018.[3]

18.   According to both the Group Home administrator and
RODRIGUEZ, RODRIGUEZ did not still work at the Group Home when
he was arrested on August 25, 2021.

19.   Employment records showed that RODRIGUEZ is not still
employed by the same Group Home Minor Victims 1, 2 and 4
resided.   However, after searching the iPhone, law enforcement
discovered that RODRIGUEZ contacted the Group Home administrator
from at least January 2021 through at least July 2021 requesting
to work overnight, or nocturnal, shifts at the Group Home.

**B.   Chats Discussing Child Pornography Between RODRIGUEZ
and "Topo2"**

20.   The following chat messages relayed are only related
in substance and in part.   The misspellings and abbreviations
from the chat are included below.   The following chats occurred
through the use of Telegram[4] and were located on RODRIGUEZ's
iPhone seized on August 25, 2021 from his person.   The following
chat messages occurred between May 17 and August 24.[5]

---

[3] Though timecard/payroll records somewhat conflict with
this, and indicate he last worked at the end of 2017.

[4] Telegram is a messaging system which employs encryption
(both server-to-end and end-to-end) as well as self-destructing
messages.   Users can also send videos and images to each other
on Telegram.   Users can delete these videos and images after
they are sent so that they do not appear in the Telegram chat,
or they can set these files to self-delete after a certain
amount of time.

[5] Based on the display in the Telegram application, I
believe the dates to be May 17, 2021, through August 24, 2021.
Additionally, I believe these chats occurred in 2021 because
*(footnote cont'd on next page)*

    1. <u>2021 Chat Between RODRIGUEZ and "Topo2"</u>

  21. After law enforcement searched RODRIGUEZ's iPhone, law enforcement found a long running chat on Telegram[6] between RODRIGUEZ and a person listed at the top of the chat as "Topo2."  The Telegram application had the phone number for "Topo2" saved as 626-366-6956 (the SUBJECT TELEPHONE).  Furthermore, on or about February 2, 2021, it appears RODRIGUEZ sent a text message to a contact labeled "Topo" with the number of SUBJECT TELEPHONE, inviting the user of SUBJECT TELEPHONE to a chat on Telegram.  Law enforcement was later able to identify "Topo" and "Topo2" as MIGUEL ANGEL BOCARDO.

  21.  In an excerpt of a chat with a date/timestamp of "May 18" and beginning at approximately 4:57 a.m. and ending at approximately 5:39 a.m., RODRIGUEZ (indicated by an "R") and "Topo2" (indicated by a "T") exchanged the following:

  R:  What u up 2

  T:  Chillen rn[7]

  T:  A bit horny rn on the low

---

there are no chats sent from RODRIGUEZ's device after August 25, 2021.  This would be consistent with the chats referenced in this warrant all occurring in 2021 because that is the day law enforcement took RODRIGUEZ's telephone into custody.

 [6] The phone was searched pursuant to a federal search warrant granted by the Honorable Alka Sagar in case number 2:21-mj-3869.  When searching the phone, law enforcement ensured the phone was on "airplane mode" meaning the device was not connected to the internet.  Thus, the messages and images from this internet chat application were actually saved onto the digital device itself.

 [7] I know that "rn" is typically internet slang for "right now."

R:  Jack off[8] to this

T:  Did u recorded that[9]

R:  ThAts not me

T:  Oh

T:  Fs[10]

R:  You should do that to the 8 year old

T:  Fs

T:  Well see was up

T:  Crazy

R:  Yup

R:  Lick that shot

R:  Shit

T:  Lol

R:  Or do u want a blowjob from her?

T:  Helll yea

R:  Fuckin bomb!!!

T:  Yea

R:  U ready for that??

T:  Well see

    a.  Based on this series of chats, I believe

RODRIGUEZ sent "Topo2" a pornographic video, then told "Topo2"

he could engage in these sex acts or receive oral copulation ("a

blowjob") from an 8-year-old victim, a minor whom RODRIGUEZ

---

[8] I know based on my training and experience that "jack off" is often slang for male masturbation.

[9] No media is displayed in this portion of the chat.  As previously mentioned, Telegram will allow users to delete media or set it to self-destruct.

[10] I know "FS" is slang for the words "for sure."

implied was accessible to him.  I believe this video was deleted on RODRIGUEZ's Telegram application such that it did not appear in RODRIGUEZ's Telegram application before law enforcement searched his phone.

22.  In an excerpt of a chat with a date/timestamp on "June 29" and beginning at approximately 7:13 a.m. and ending at approximately 9:12 a.m., RODRIGUEZ (indicated by an "R") and "Topo2" (indicated by a "T") exchanged the following:

R:  WhAt u doing Friday night

T:  Not much

R:  Ima work

R:  In that group home

R:  Wana join

T:  Fs I'll see was up

T:  But lmk[11]

T:  Fs

23.  In an excerpt from a chat with date/timestamp on "June 30" and beginning at approximately 7:21 a.m. and ending at approximately 9:17 a.m., RODRIGUEZ (indicated by an "R") and "Topo2" (indicated by a "T") exchanged the following:

R:  Wana see

T:  FS

T:  Yea ir

T:  Big deep trought

---

[11] I know "lmk" is slang for the words "let me know."

R:  Big time

R:  Crazy little girl huh

T:  Yup

T:  Hell yea stick it in

R:  In her ass

T:  Cant fit

R:  Ya it did but not in that video[12]

T:  Oh let see

T:  Lol[13]

R:  Yes

R:  Just don't save any u don't want these on ur phone

R:  Lol

T:  Ik[14] hell no

R:  Lol

T:  Dam straight inside deep

T:  U got that

R:  Naw

R:  That's not me

R:  U can do that to that 8 year old and I'll record it

R:  It can fit in the 8 year old

---

[12] Again, no video appears in this portion of the chat.  I believe this/these video(s) were deleted in RODRIGUEZ's Telegram Application before law enforcement searched his phone.

[13] I know "lol" is slang for "laughing out loud."

[14] I know "ik" is slang for "I know."

T:  Yea tru well see thoe I want a milf[15]

R:  In her ass tho

R:  Hot huh

    i.  Based on the fact that RODRIGUEZ had previously asked "Topo2" whether he wanted to get "a blowjob" from "the 8 year old[,]" then referenced having "Topo2" join him at the group home, I believe that RODRIGUEZ was offering to have "Topo2" join him at a group home[16] to sexually assault an 8-year-old child, and later offered to film "Topo2" sexually abusing an 8-year-old child.

    ii.  Law enforcement has found extensive video evidence of RODRIGUEZ sexually assaulting Minor Victims 1, among others, at the Group Home.  To date law enforcement has not found any videos in RODRIGUEZ's possession that appear to depict anybody other than RODRIGUEZ assaulting the known victims at the Group Home.  However, that may change with additional evidence or investigation, which may provide additional context to the already discovered videos that were in RODRIGUEZ's possession.

24.  In an excerpt of a chat with date/timestamp on "July 2"[17] and beginning at approximately 4:21 p.m. and ending at

---

[15] Based on my training and experience, and the context of the conversation, I believe "Milf" refers to "Mom I'd like to fuck."

[16] To date law enforcement does not know if the group home referenced in this chat is the Group Home with the known victims or a different location.

[17] This date occurred on the first Friday after the June 29, 2021 chat referenced above.

approximately 4:23 p.m., RODRIGUEZ (indicated by an "R") and "Topo2" (indicated by a "T") exchanged the following:

T:  Yo for tonight u down send the 200 on cash app ?

R:  ??

T:  Member last time I record

R:  Ya im broke man I would have told u

T:  Oh fs

25.  In an excerpt of a chat with date/timestamp on "August 24" and beginning at approximately 9:08 a.m. and ending at approximately 9:13 a.m., RODRIGUEZ (indicated by an "R") and "Topo2" (indicated by a "T") exchanged the following:

T:  Was up

R:  8 year old who gave me head

T:  Nice

T:  We're the milfs at

R:  Yes I was putting it in her ass

R:  Idk lol more into kids lol

T:  Oh fs

26.  By clicking on the contact information for "Topo2" within Telegram, I saw the contact listed phone number 626-366-6956 (the SUBJECT TELEPHONE).

**C.   Identification of "Topo2" as BOCARDO**

27.  On or about October 27, 2021, T-Mobile responded to legal process with the following subscriber information for the SUBJECT TELEPHONE:

| | |
|---|---|
| Subscriber Name | RICARDO BOCARDO |
| Subscriber Address | 4628 BRESEE AVE, BALDWIN PARK, CA 91706 USA |
| Subscriber Status | Active |
| Subscriber Name Effective Date | 11/19/2020 |
| Rate Plan Desc | T-Mobile Essentials 2+[18] |

28.  In or about November, 2021, law enforcement located Ricardo Bocardo ("R. Bocardo") and Miguel Bocardo's (BOCARDO) Facebook profiles.  In their profiles there were multiple messages referring to BOCARDO as "Topo."  For example, in 2013, R. Bocardo replies to a message and refers to BOCARDO as "topo[.]"  A screenshot from a publicly posted message reflecting this is attached as Exhibit 2.  In another post, another user commented on a picture of BOCARDO "how cute topo."

29.  On or about November 3, 2021, law enforcement received the following records for BOCARDO:

a.  A California driver's license record which showed a mailing address to the SUBJECT PREMISES as of August 17, 2021. BOCARDO's driver's license, with number Y8508576, describes him as 5 feet 6 inches tall and 230 pounds with black hair and brown eyes.  I also viewed the image of BOCARDO's license.

b.  Employment Development Department ("EDD") records from the state of California which shows the SUBJECT TELEPHONE

---

[18] Based on this information, I believe that more than one phone number would resolve to Ricardo Bocardo as the subscriber as I believe this is a group phone plan.

and the SUBJECT PREMISES associated with BOCARDO as of August 6, 2021.

30.   I located information from the Los Angeles County Consolidated Criminal History Reporting System which showed BOCARDO's address as the SUBJECT PREMISES as of May 28, 2019.  I also viewed the most recent booking image of BOCARDO, which appears to depict the same person as his driver's license photo.

## VI. <u>TRAINING & EXPERIENCE ON INDIVIDUALS WITH A SEXUAL INTEREST IN CHILDREN</u>

31.   Based on my training and experience, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who view and possess multiple images of child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals:

a.   Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or in other visual media, or from literature describing such activity.  These individuals often maintain possession of these items for long periods of time and keep their collections in numerous places – in digital devices in their homes, in their cars, in their workplaces, or on their persons.

b.   Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials (including through digital distribution via the Internet); conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.  These individuals often maintain possession of these items for long periods of time.

32.  If an individual produces an image of child pornography on a digital device, law enforcement can often obtain evidence of this production if they are to seize and search the digital device itself, even if the image is no longer stored on the digital device.

33.  Digital child pornography on a digital device is easy to maintain for long periods of time.  Modern digital devices often have extremely large storage capacities.  Furthermore, cheap and readily available storage devices, such as thumb drives, external hard drives, and compact discs make it simple for individuals with a sexual interest in children to download child pornography from the Internet and save it – simply and securely – so it can be accessed or viewed indefinitely.

34.  Furthermore, even if a person deleted any images of child pornography that may have been possessed or distributed, there is still probable cause to believe that there will be evidence of the illegal activities – that is, the possession,

receipt, and/or distribution of child pornography – at the
SUBJECT PREMISES or on BOCARDO's person.  Based on my training
and experience, as well as my conversations with digital
forensic experts, I know that remnants of such files can be
recovered months or years after they have been deleted from a
computer device.  Evidence that child pornography files were
downloaded and viewed can also be recovered, even after the
files themselves have been deleted, using forensic
tools.  Because remnants of the possession, distribution, and
viewing of child pornography is recoverable after long periods
of time, searching the SUBJECT PREMISES and BOCARDO's person
could lead to evidence of the child exploitation offenses.

## VII. <u>TRAINING & EXPERIENCE ON DIGITAL DEVICES</u>[19]

35.  Based on my training, experience, and information from
those involved in the forensic examination of digital devices, I
know that the following electronic evidence, inter alia, is
often retrievable from digital devices:

a.  A person who connects to the Internet must use a
computer or mobile device, such as a tablet or wireless
telephone, to facilitate that access.  Furthermore, in my
training and experience, these devices typically travel with a

---

[19] As used herein, the term "digital device" includes any
electronic system or device capable of storing or processing
data in digital form, including central processing units;
desktop, laptop, notebook, and tablet computers; personal
digital assistants; wireless communication devices, such as
paging devices, mobile telephones, and smart phones; digital
cameras; gaming consoles; peripheral input/output devices, such
as keyboards, printers, scanners, monitors, and drives; related
communications devices, such as modems, routers, cables, and
connections; storage media; and security devices.

subject or remain in SUBJECT PREMISES.  It is therefore reasonable to believe that computers, tablets, wireless telephones, and other electronic storage media may be present in SUBJECT PREMISES or on BOCARDO's person.  Further, because it is possible to store certain mobile devices, such as removable storage media and wireless telephones, in a pocket, it is reasonable to believe that mobile devices may be found on BOCARDO's person or in any place a small item can fit.

b.    Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

c.    Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places

24

where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

d.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

e.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

36.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

a.    Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a

complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above. Also, there are now so many types of digital devices and programs that it is difficult to bring to a search site all of the specialized manuals, equipment, and personnel that may be required.

b. Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

37. The search warrant requests authorization to use the biometric unlock features of the devices seized, based on the following, which I know from my training, experience, and review of publicly available materials:

a. Users may enable a biometric unlock function on some digital devices. To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device. To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second. To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

b.    In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts.  Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time.  I do not know the passcodes of the devices likely to be found in the search.

c.    As noted above, I know that most homes with Internet capability use only one IP address.  That IP address, in turn, is often shared by many devices that access the Internet using a wireless modem.  Accordingly, if there are multiple digital devices discovered during a search of the SUBJECT PREMISES, any of those devices could have been used to access the Internet and download the files discussed above.

d.    Thus, if while executing the warrant, law enforcement personnel encounter a digital device within the scope of the warrant that may be unlocked using one of the aforementioned biometric features, the warrant I am applying for would permit law enforcement personnel to, with respect to BOCARDO, provided he is located in the Central District of California during the execution of the search: (1) depress the BOCARDO's thumb- and/or fingers on the device(s); and (2) hold the device(s) in front of BOCARDO's face with his or her eyes open to activate the facial-, iris-, and/or retina-recognition feature.

27

38.  Other than what has been described herein, to my
knowledge, the United States has not attempted to obtain this
data by other means.

### VIII.      CONCLUSION

39.  For all the reasons described above, there is probable
cause to believe to believe that evidence, fruits, and
instrumentalities of violations of 18 U.S.C. § 2251A(a):
Offering to Transfer Custody of a Minor for Purposes of
Producing Child Pornography; 18 U.S.C. § 2251A(b): Obtaining
Custody of a Minor for Purposes of Producing Child Pornography;
18 U.S.C. §§ 2251(a), (e): Production of Child Pornography; 18
U.S.C. §§ 2252A(a)(2)(A), (b)(1): Distribution and Receipt of
Child Pornography; and 18 U.S.C. § 2252A(a)(5)(B), (b)(2):
Access with Intent to View Child Pornography and Possession of
Child Pornography as described in Attachment B, will be found in
a search of the SUBJECT PREMISES, BOCARDO, and the SUBJECT
TELEPHONE.


Attested to by the applicant in
accordance with the requirements of
Fed. R. Crim. P. 4.1 by telephone on
this _____ day of _____, 2021.


_____
THE HONORABLE ALEXANDER F. MACKINNON
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 1

FILED

09/29/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____DM_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2021 Grand Jury

| UNITED STATES OF AMERICA, | ED CR 21-188(A)-JWH |
|---|---|
| Plaintiff, | F I R S T S U P E R S E D I N G I N D I C T M E N T |
| v. | |
| STEVE JACKSON RODRIGUEZ and CYR DINO BANGUGUILAN, Defendants. | [18 U.S.C. § 2251A(b): Obtaining Custody of a Minor for Purposes of Producing Child Pornography; 18 U.S.C. §§ 2251(a), (e): Production of Child Pornography; 18 U.S.C. § 2422(b): Enticement of a Minor to Engage in Criminal Sexual Activity; 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1): Distribution and Receipt of Child Pornography; 18 U.S.C. § 2252A(a)(5)(B), (b)(2): Possession of Child Pornography; 18 U.S.C. §§ 2253, 2428, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this First Superseding Indictment:

1.   Minor Victim 1 was born in September 2009.

2.   Minor Victim 2 was born in March 2005.

3.   Minor Victim 3 was born in September 2004.

4. Minor Victim 4 was born in June 1999.

5. Minor Victim 1, Minor Victim 2, and Minor Victim 4, all lived at a group home in Chino, California, that housed and provided services to mentally and physically disabled children (the "Group Home").

6. From in or around 2014 to 2016, defendant STEVE JACKSON RODRIGUEZ worked as a Certified Nursing Assistant at the Group Home, including for overnight shifts, from approximately midnight to 6:00 a.m. On or about March 14, 2017, defendant RODRIGUEZ worked another overnight shift at the Group Home. During these overnight shifts, defendant RODRIGUEZ was assigned to attend to approximately six mentally and physically disabled residents, including Minor Victim 1, Minor Victim 2, and Minor Victim 4.

7. In December 2017 and January 2018, defendant RODRIGUEZ communicated by cellular telephone with the administrator of the Group Home to ask to return to work at the Group Home to work overnight shifts.

8. In December 2017 and January 2018, defendant RODRIGUEZ's cellular telephone service provider was Sprint, a telecommunications provider that operated in interstate and foreign commerce.

9. On or about January 1, 2018 and January 27, 2018, defendant RODRIGUEZ worked overnight shifts at the Group Home. During these overnight shifts, defendant RODRIGUEZ was the sole person on staff attending to the six physically and mentally disabled residents in the Group Home, including Minor Victim 1 and Minor Victim 2.

10. These Introductory Allegations are incorporated into each count of this First Superseding Indictment.

COUNT ONE

[18 U.S.C. §§ 2251(a), (e)]

[DEFENDANT RODRIGUEZ]

On or about January 10, 2016, in San Bernardino County, within the Central District of California, and elsewhere, defendant STEVE JACKSON RODRIGUEZ knowingly employed, used, persuaded, induced, enticed, and coerced Minor Victim 1, who had not attained 18 years of age, to engage in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2)(A), for the purpose of producing a visual depiction of such conduct, namely, the image file titled "663c5bd871bc97cff0fe0be455414f6d1.0-1.jpg," knowing and having reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, which visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer and cellular telephone, and which visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, including by use of the Internet.

COUNT TWO

[18 U.S.C. §§ 2251(a), (e)]

[DEFENDANT RODRIGUEZ]

On or about February 7, 2016, in San Bernardino County, within the Central District of California, and elsewhere, defendant STEVE JACKSON RODRIGUEZ knowingly employed, used, persuaded, induced, enticed, and coerced Minor Victim 1, who had not attained 18 years of age, to engage in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2)(A), for the purpose of producing a visual depiction of such conduct, namely, the image file titled "7c20edc1ea1da88d675fca00af5f278e1.0-1.jpg," knowing and having reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, which visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer and cellular telephone, and which visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, including by use of the Internet.

COUNT THREE

[18 U.S.C. §§ 2251(a), (e)]

[DEFENDANT RODRIGUEZ]

On or about March 14, 2017, in San Bernardino County, within the Central District of California, and elsewhere, defendant STEVE JACKSON RODRIGUEZ knowingly employed, used, persuaded, induced, enticed, and coerced Minor Victim 1, who had not attained 18 years of age, to engage in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2)(A), for the purpose of producing a visual depiction of such conduct, namely, the video file titled "20170314_222941.mp4," knowing and having reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, which visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer and cellular telephone, and which visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, including by use of the Internet.

COUNT FOUR

[18 U.S.C. §§ 2251(a), (e)]

[DEFENDANT RODRIGUEZ]

On or about March 15, 2017, in San Bernardino County, within the Central District of California, and elsewhere, defendant STEVE JACKSON RODRIGUEZ knowingly employed, used, persuaded, induced, enticed, and coerced Minor Victim 4, who had not attained 18 years of age, to engage in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2)(A), for the purpose of producing a visual depiction of such conduct, namely, the video files titled "20170315_014555.mp4" and "20170315_014749.mp4," knowing and having reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, which visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer and cellular telephone, and which visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, including by use of the Internet.

COUNT FIVE

[18 U.S.C. § 2251A(b)]

[DEFENDANT RODRIGUEZ]

Beginning in or around December 2017, and continuing until on or about January 1, 2018, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendant STEVE JACKSON RODRIGUEZ offered to obtain, and obtained, custody and control of Minor Victim 1 and Minor Victim 2, with knowledge that as a consequence of obtaining custody, Minor Victim 1 and Minor Victim 2 would be portrayed in a visual depiction engaging in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2)(A), and with the intent to promote the engaging in of sexually explicit conduct by Minor Victim 1 and Minor Victim 2 for the purpose of producing any visual depiction of such conduct, and the offer was communicated and transported using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by cellular telephone.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT SIX

[18 U.S.C. §§ 2251(a), (e)]

[DEFENDANT RODRIGUEZ]

On or about January 1, 2018, in San Bernardino County, within the Central District of California, and elsewhere, defendant STEVE JACKSON RODRIGUEZ knowingly employed, used, persuaded, induced, enticed, and coerced Minor Victim 1, who had not attained 18 years of age, to engage in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2)(A), for the purpose of producing a visual depiction of such conduct, including but not limited to the video files titled "20180101_005258.mp4," "20180101_005747.mp4," "20180101_010134.mp4," and "20180101_041109.mp4," knowing and having reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, which visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer and cellular telephone, and which visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, including by use of the Internet.

8

COUNT SEVEN

[18 U.S.C. §§ 2251(a), (e)]

[DEFENDANT RODRIGUEZ]

On or about January 1, 2018, in San Bernardino County, within the Central District of California, and elsewhere, defendant STEVE JACKSON RODRIGUEZ knowingly employed, used, persuaded, induced, enticed, and coerced Minor Victim 2, who had not attained 18 years of age, to engage in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2)(A), for the purpose of producing a visual depiction of such conduct, namely, the video file titled "20180101_014805.mp4," knowing and having reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, which visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer and cellular telephone, and which visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, including by use of the Internet.

COUNT EIGHT

[18 U.S.C. § 2251A(b)]

[DEFENDANT RODRIGUEZ]

Beginning in or around December 2017 and continuing until on or about January 27, 2018, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendant STEVE JACKSON RODRIGUEZ offered to obtain, and obtained, custody and control of Minor Victim 1, with knowledge that as a consequence of obtaining custody, Minor Victim 1 would be portrayed in a visual depiction engaging in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2)(A), and with the intent to promote the engaging in of sexually explicit conduct by Minor Victim 1 for the purpose of producing any visual depiction of such conduct, and the offer was communicated and transported using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by cellular telephone.

COUNT NINE

[18 U.S.C. §§ 2251(a), (e)]

[DEFENDANT RODRIGUEZ]

On or about January 27, 2018, in San Bernardino County, within the Central District of California, and elsewhere, defendant STEVE JACKSON RODRIGUEZ knowingly employed, used, persuaded, induced, enticed, and coerced Minor Victim 1, who had not attained 18 years of age, to engage in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2)(A), for the purpose of producing a visual depiction of such conduct, namely, the video files titled "20180127_011432.mp4," "20180127_011654.mp4," "20180127_011802.mp4," and "20180127_011903.mp4," knowing and having reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, which visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer and cellular telephone, and which visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, including by use of the Internet.

COUNT TEN

[18 U.S.C. §§ 2251(a), (e)]

[DEFENDANT RODRIGUEZ]

Beginning on an unknown date, and continuing until at least on or about December 8, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant STEVE JACKSON RODRIGUEZ knowingly employed, used, persuaded, induced, enticed, and coerced Minor Victim 3, who had not attained 18 years of age, to engage in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2)(A), for the purpose of producing a visual depiction of such conduct, namely, the video file titled "IMG_1428.mp4," knowing and having reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, which visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer and cellular telephone, and which visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, including by use of the Internet.

COUNT ELEVEN

[18 U.S.C. §§ 2251(a), (e)]

[DEFENDANT RODRIGUEZ]

Beginning on an unknown date, and continuing until at least on or about May 1, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant STEVE JACKSON RODRIGUEZ knowingly employed, used, persuaded, induced, enticed, and coerced Minor Victim 3, who had not attained 18 years of age, to engage in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2)(A), for the purpose of producing a visual depiction of such conduct, namely, the video file titled, "IMG_2486.MOV," knowing and having reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, which visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer and cellular telephone, and which visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, including by use of the Internet.

COUNT TWELVE

[18 U.S.C. § 2422(b)]

[DEFENDANT RODRIGUEZ]

Beginning on a date unknown and continuing to at least on or about June 24, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant STEVE JACKSON RODRIGUEZ used a facility and means of interstate and foreign commerce, namely, the Internet and a cellular telephone, to knowingly persuade, induce, entice, and coerce an individual who had not attained the age of 18 years, namely, Minor Victim 3, whom defendant RODRIGUEZ knew to be under 18 years old, to engage in sexual activity for which a person can be charged with criminal offenses, namely, Statutory Rape – Minor Under the Age of 16 and Perpetrator Over the Age of 21, in violation of California Penal Code, Section 261.5(d), and Lewd Acts - Minor Child of 14 or 15 Years Old, in violation of California Penal Code, Section 288(c)(1).

COUNT THIRTEEN

[18 U.S.C. §§ 2252A(a)(2)(A), (b)(1)]

[DEFENDANT RODRIGUEZ]

On or about August 24, 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant STEVE JACKSON RODRIGUEZ knowingly distributed an image of child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), using a means and facility of interstate and foreign commerce, namely, an encrypted Internet-based messaging application, and which had been shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, the Internet, and cellular telephone, knowing that the image was child pornography.

The child pornography that defendant RODRIGUEZ distributed on or about August 24, 2021, consisted of three images sent via the Telegram application at or around 1:20 p.m., to Cyr Dino Banguguilan, that depicted defendant RODRIGUEZ orally copulating Minor Victim 1, a minor female.

COUNT FOURTEEN

[18 U.S.C. §§ 2252A(a)(2)(A), (b)(1)]

[DEFENDANT BANGUGUILAN]

On or about August 24, 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant CYR DINO BANGUGUILAN knowingly received an image of child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), using any means and facility of interstate and foreign commerce, namely, an encrypted Internet-based messaging application, and which had been shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, the Internet, and cellular telephone, knowing that the image was child pornography.

The child pornography that defendant BANGUGUILAN received on or about August 24, 2021, consisted of three images sent via the Telegram application at or around 1:20 p.m., from Steve Jackson Rodriguez, that depicted Rodriguez orally copulating Minor Victim 1, a minor female.

COUNT FIFTEEN

[18 U.S.C. §§ 2252A(a)(5)(B), (b)(2)]

[DEFENDANT RODRIGUEZ]

On or about August 11, 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant STEVE JACKSON RODRIGUEZ knowingly possessed a Google cloud account registered to "Steve Rodriguez," that contained at least one image of child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), which involved a prepubescent minor and a minor who had not attained 12 years of age, that had been shipped and transported using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, knowing that the images were child pornography.

The child pornography that defendant RODRIGUEZ possessed in his Google cloud account registered to "Steve Rodriguez," included, but was not limited to, videos titled:

(1) "7yo_Niece(8).mp4"

(2) "2012 -ell 04m17S (1).avi"

(3) "PTHC 2016 BIBIGON VID 5 LAST 12MIN A,F,D HD (1).mp4"

COUNT SIXTEEN

[18 U.S.C. §§ 2252A(a)(5)(B), (b)(2)]

[DEFENDANT BANGUGUILAN]

On or about August 24, 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant CYR DINO BANGUGUILAN knowingly possessed a Telegram account that contained at least one image of child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), which involved a prepubescent minor and a minor who had not attained 12 years of age, that had been shipped and transported using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, the Internet, and cellular telephone, knowing that the images were child pornography.

The child pornography that defendant BANGUGUILAN possessed in his Telegram application account consisted of an image file received via the Telegram application from Steve Jackson Rodriguez, on or about August 24, 2021, at approximately 7:08 a.m., which defendant BANGUGUILAN viewed on or before August 24, 2021 at 7:17 a.m., and which depicted the penis of an adult male anally penetrating Minor Victim 1.

18

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 2253 and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 2253 and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Eleven or Thirteen through Sixteen of this First Superseding Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following property:

        (a)   All right, title, and interest in any visual depiction involved in any such offense, or any book, magazine, periodical, film videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received and involved in any such offense;

        (b)   All right, title, and interest in any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense;

        (c)   All right, title, and interest in any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property; and

        (d)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 2253(b), any

19

defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 2428 and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 2428 and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count Twelve of this First Superseding Indictment.

2.   The defendant, if so convicted, shall forfeit to the United States of America the following property:

(a)   All right, title, and interest in any property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such offense;

(b)   All right, title, and interest in any property, real or personal, constituting or derived from any proceeds obtained directly or indirectly from such offense; and

(c)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party;

(c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                                    A TRUE BILL

                                    /S/
                                    _____
                                    Foreperson

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

JOANNA CURTIS
Assistant United States Attorney
Chief, Violent and Organized
Crime Section

SCOTT M. LARA
Assistant United States Attorneys
Violent and Organized Crime
Section

# EXHIBIT 2

 **Ricardo Bocardo**
March 23, 2013 · 🌐

# The kickback is canceld

 2                                           7 Comments

↗ Share

---

 **Miguel Bocardo**
Pussy shit

8y

 **Juan Cortez**
Why bitch

8y

 **Miguel Bocardo**
Ranker

8y

 **Jefersson Sazo**
Aww wtf?
 1

8y

 **Ricardo Bocardo**
fk u topo i told u to make it and u said noo so ur the ranker cause u didnt want to make it so stfu

8y                                            1

 **Miguel Bocardo**
Fuck you fuck your shit
 2

8y

 **Ricardo Bocardo**
Stfu u faget wat u just think ur da shit in facebook but in reality your a lil bitch

8y